1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    WILLIAM J. POWERS,                    No. C 06-5423 SI

9              Plaintiff,                  **ORDER GRANTING PLAINTIFF'S**
                                           **MOTION FOR SUMMARY JUDGMENT,**
10       v.                                **DENYING DEFENDANT'S MOTION**
                                           **FOR SUMMARY JUDGMENT, AND**
11   MICHAEL J. ASTRUE,                     **REMANDING ACTION TO AGENCY**
     Commissioner of Social Security.       **FOR FURTHER PROCEEDINGS**
12
              Defendant.
13   _____/

14

15           Now before the Court are the parties' cross-motions for summary judgment.  After review of the

16   parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion,  DENIES

17   defendant's motion, and REMANDS this action to the Social Security Administration for further

18   proceedings.

19

20                              **BACKGROUND**

21           On July 30, 1999, plaintiff William J. Powers filed an application for Social Security Disability

22   Insurance benefits.  *See* Administrative Record ("AR") at 378.[1]  Plaintiff's claim was initially denied

23   on November 24, 1999, and again after reconsideration on May 11, 2000.  *Id.*  Plaintiff did not exercise

24   his right to request a hearing and review of that decision by an Administrative Law Judge ("ALJ").

25           On May 15, 2001, plaintiff filed another application for benefits.  *Id.* at 125-128.  Plaintiff

26   alleged disability from June 25, 1999 due to left knee and right leg surgeries, glaucoma, high blood

27   _____

28          [1]  The administrative record does not contain a copy of plaintiff's 1999 application or of any of
     the agency's denials of that application.  This information regarding the 1999 application is taken from
     the ALJ's November 2005 decision.

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   pressure, depression, asthma, loss of hearing, and hemorrhoids. *Id*. at 133-42. The Social Security

2   Administration ("SSA") denied the application initially and on reconsideration. *Id*. at 86-89, 91-95.

3   Plaintiff requested a hearing before an ALJ. *Id*. at 96. The hearing was held on May 2, 2002 before ALJ

4   Lazuran. *Id*. at 18. On October 23, 2002, ALJ Lazuran issued a decision finding that plaintiff was not

5   disabled and denying the application. *Id*. at 18-28.

6         Plaintiff pursued his administrative remedies, and ultimately sought review in this Court. *See*

7   *Powers v. Barnhart*, C 03-4877 SI. Pursuant to the parties' stipulation, the Court remanded plaintiff's

8   case for further administrative proceedings. *See* April 27, 2004 Order Remanding Case and Judgment

9   (Docket No. 15 in C 03-4877); AR 403-04. The order provided,

10         On remand, the Administrative Law Judge (ALJ) shall re-evaluate the examining
        medical source opinion of Thurman Wheeler, M.D. with respect to the "bending" and
11        "stooping" restrictions indicated, and if rejecting, the ALJ shall provide proper reasons
        for rejection. If warranted, the ALJ shall also recontact the examining source to re-state
12        postural restrictions in terms consistent with the definitions in 20 C.F.R. § 416.969a and
        Social Security Rulings 96-9p and 83-10 and/or obtain supplemental evidence from a
13        vocational expert to clarify the assessed limitations on the claimant's occupation base.

14   AR at 403. The SSA Office of Hearings and Appeals ("OHA") remanded the case for further

15   proceedings before ALJ Wurdeman. AR at 405-09.[2]

16

17         ALJ Wurdeman held a hearing on August 2, 2005, *id*. at 426, 498, and issued a decision on

18   November 18, 2005. *Id*. at 378-85. ALJ Wurdeman first noted that plaintiff had filed an earlier

    application for benefits,
19

20         Claimant filed a prior application for similar benefits on July 30, 1999, which was denied
        initially on November 24, 1999 and upon reconsideration on May 11, 2000 without
21        further pursuit of his administrative remedies. There are no facts or arguments that rise
        to the level of good cause for reopening, and I find no basis for reopening the earlier
22        claim. *See* 20 C.F.R. §§ 416.1487-416.1489. Any reference to the medical evidence
        adduced during the period of time relevant only to the earlier claim is made for purposes
23        of context only.

24   *Id*. at 378. It appears from the record that the ALJ *sua sponte* considered the issue of reopening the 1999

25   application; the record does not contain any requests by plaintiff to reopen the 1999 application, nor was

26         [2]   After ALJ Lazuran denied plaintiff's 2001 application, plaintiff filed another application for
    benefits on November 27, 2002. In the remand order, OHA stated "[t]he Appeals Council's action with
27   respect to the current claim renders the subsequent claim duplicate," and OHA instructed ALJ
    Wurdeman to associate the two claim files. *Id*. at 408. Plaintiff does not challenge this aspect of the
28   ALJ's decision.

United States District Court
For the Northern District of California

this issue discussed at the August 2, 2005 hearing.

The ALJ also found that plaintiff was not disabled. In reaching this decision, the ALJ applied the five-step sequential evaluation procedure set forth in 20 C.F.R. § 416.920(a)(4).[3] At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his SSI application date. *Id.* at 379. At the second step, the ALJ found that plaintiff's musculoskeletal, respiratory and mental impairments were severe. *Id.* At step three, the ALJ found that plaintiff's impairments did not, singly or in combination, meet or equal an impairment listed in Appendix 1 of Subpart P of Part 404 of the regulations. *Id.* The parties agree that in assessing plaintiff's impairments at step three, the ALJ applied the regulations that were in effect in 2005, rather than the regulations that were effective at the time that plaintiff filed the May 2001 application.

At step four, the ALJ found that plaintiff had a residual functional capacity ("RFC") for "work activity at the sedentary exertional level with no bending to the floor, no stooping, no kneeling, no crouching, a clean air environment, and no walking on rough terrain." *Id.* at 383. The ALJ also found that plaintiff had no past relevant work, and proceeded to step five during which the burden shifted to the agency to describe what jobs, if any, plaintiff could perform. *Id.* at 384. The ALJ relied on the testimony of a vocational expert and found that plaintiff could perform sedentary, unskilled jobs as a credit checker, new account clerk, or a surveillance systems monitor. *Id.*

---

[3] The Social Security Act regulations establish a five-step procedure to be followed by the ALJ in order to evaluate disability claims. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-41. The Ninth Circuit has described the five-step procedure as follows:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). For steps one through four of the analysis, the claimant carries the burden of proving a disability. *Id.* In step five, the burden to show that the claimant can perform other substantial gainful work shifts to the Commissioner. *Id.*

**LEGAL STANDARD**

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.  The statute authorizes judicial review "after any final decision of the Commissioner of Social Security."  42 U.S.C. § 405(g).  The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it is based on legal error."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).

The Supreme Court held that "[s]ubstantial evidence "means" more than a mere scintilla, but "less than a preponderance" of the evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The Commissioner's decision  need only be supported by substantial evidence. *Campbell ex rel. Campbell v. Apfel*, 177 F.3d 891 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, it is the conclusion of the ALJ that must be upheld. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

However, even if substantial evidence supports the ALJ's factual findings, the decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002). When a reviewing court concludes that the ALJ's findings are based on legal error or not supported by the record, the court may set aside the decision and direct payment of benefits or remand the case for a new hearing. *See Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *Lewin v. Schweiker*, 654 F.2d 631,  635 (9th Cir. 1981).  Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate. *Id*. The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *See Sprague*, 812 F.2d at 1232.

**DISCUSSION**

**I.      Reopening the 1999 application**

Plaintiff first contends that the ALJ erred by failing to reopen the 1999 application.  In general,

district courts lack jurisdiction to review such decisions. *See Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997). In *Evans*, the Ninth Circuit held that district courts may have jurisdiction to review a decision not to reopen if the claimant raises a colorable constitutional claim that (1) relates to the manner or means by which the SSA decided not to reopen a prior decision, or (2) implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination in connection with the application that the claimant seeks to re-open. *Id*. at 1483. In *Evans*, the court held that there was jurisdiction to review a decision not to reopen when the plaintiff alleged that he suffered from a mental impairment and was without counsel during the application that was the subject of the reopening request. *Id*.

Plaintiff contends that, like the plaintiff in *Evans*, he has alleged a colorable constitutional claim because he was suffering from depression and without counsel when he filed his 1999 application. Plaintiff contends that his due process rights were violated because the ALJ did not adequately consider whether there was good cause to reopen the 1999 application. Plaintiff argues that this Court should remand to the ALJ for an evidentiary hearing on whether plaintiff has "provided evidence of changed circumstances and/or for an SSR 91-5p hearing on whether good cause exists to toll the administrative finality statute." Plaintiff's Motion at 7.

The Court finds that even assuming that plaintiff has alleged a colorable constitutional claim, plaintiff's due process challenge fails on the merits. Plaintiff did *not* request that ALJ Wurdeman reopen the 1999 application. Instead, it appears from the record that the ALJ considered the issue *sua sponte* when writing the decision. The administrative record does not contain any requests by plaintiff to reopen the 1999 application, and there was no discussion of the 1999 application during the August 2, 2005 hearing. Indeed, plaintiff's counsel stated at the hearing that the "original onset date" was based on the May 2001 SSI application. AR at 500. Plaintiff does not articulate how the ALJ denied him a meaningful opportunity to be heard on any issue that neither party ever raised, nor does plaintiff explain what good cause – aside from plaintiff's depression and *pro se* status – existed to reopen the 1999

United States District Court
For the Northern District of California

1   application.[4]

2         To the extent that plaintiff contends that his depression warranted reopening the earlier

3   application, the evidence in the record does not support this contention.  Plaintiff stated during the 2005

4   hearing that in 1998 or 1999 he was prescribed an anti-depressant and "[t]hey seemed to work for two

5   years." AR at 518.  At no point in plaintiff's testimony before ALJ Wurdeman did plaintiff suggest that

6   he was mentally incompetent during the time that the 1999 application was pending.  Similarly, as

7   described in ALJ Wurdeman's decision, the psychiatric evidence in the record shows that while plaintiff

8   suffered from depression and concomitant problems with concentration and social interaction, he was

9   capable of handling his affairs and was not mentally incapacitated.  *Cf. Evans*, 110 F.3d at 1484 (after

10  finding jurisdiction to review claim, holding that ALJ did not violate the plaintiff's due process rights

11  because "mental status exams revealed full orientation, average range of intelligence, no signs of

12  thought disorder, mild degree of cognitive impairment involving recent and long-term memory, the

13  ability to understand simple questions and that [he was] capable of handling [his] own affairs.")

14

15  **II.     The 2001 application**

16        Plaintiff raises a number of challenges to the ALJ's decision finding that plaintiff was not

17  disabled.  Plaintiff first contends that the ALJ erred at step three of the sequential analysis when he

18  concluded that plaintiff's impairments did not meet or equal a listing.  Plaintiff argues that the ALJ

19  should have applied a previous version of Listing 1.03 (under "Musculoskeletal" impairments), instead

20  of the version that was in effect at the time that the ALJ issued his decision.[5]  Under the version in effect

21  at the time of the ALJ's decision, Listing 1.03 stated,

22

23        [4] Plaintiff also contends that his May 2001 application was an "implied reopening request," and
    that the ALJ erred by failing to analyze that request under § 416.1489(a).  The Court finds that this
24  contention lacks merit, however, because the ALJ cited Sections 416.1487-416.1489 when he found that
    there were "no facts or arguments that rise to the level of good cause for reopening" the 1999
25  application.  Thus, regardless of whether plaintiff's May 2001 application was an "implied reopening
    request," the ALJ considered whether there was good cause to reopen the 1999 application, and found
26  that there was not.

27        [5] The revised version of Listing 1.03 became effective February 19, 2002.  *See* Revised Medical
    Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg.
28  58,010 (Nov. 19, 2001).  Plaintiff filed his application in May 2001, and ALJ Wurdeman issued the
    decision (after remand) in November 2005.

> 1.03  *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.03 (2005).  The regulations define "inability to ambulate effectively" as follows:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. at § 1.00B2b (2005).  The ALJ found that plaintiff did not meet Listing 1.03 because several doctors found that plaintiff could walk without an assistive device for short distances, albeit with a limp.  *See* AR 380-84 (discussing medical evidence).

Under the previous version of Listing 1.03, a claimant had to establish the following:

1.03 *Arthritis of a major weight-bearing joint (due to any cause)*:

With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination.  With:

A.  Gross anatomical deformity of hip or knee (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or

B.  Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. § 404, Subpt. P, App. 1, § 1.03 (2001).  Plaintiff contends that he meets the requirements of the former version of Listing 1.03.  Defendant does not address whether the evidence would support

7

United States District Court
For the Northern District of California

such a finding, and instead simply asserts that the ALJ properly applied the revised version of Listing 1.03.

The ALJ was permitted to apply the revised version of Listing 1.03 unless the regulatory change is considered "retroactive."  In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court explained that not all statutes raise retroactivity concerns.  "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . ."  *Id.* at 269.  A statute has retroactive effects if the statute

> attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . . [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* at 270.

The Ninth Circuit has not yet addressed the question of whether applying a new or revised regulation to a pending Social Security application is impermissibly retroactive.  The parties cite a number of cases which have addressed this question and reached differing conclusions.  Most of these cases involve a 1999 revision to the Social Security regulations which deleted obesity as a separately listed impairment under step three.

Some courts have characterized this revision as a procedural one, and held that the revised regulation could be applied to pending applications.  *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (en banc).  Other courts have disagreed, and held that the application of the revised obesity regulation is impermissibly retroactive.  *Cherry v. Barnhart*, 327 F. Supp. 2d 1347 (N.D. Okla. 2004), *aff'd*, 125 Fed.Appx. 913 (10th Cir. 2005) (unpublished), is factually similar to the instant case – and *Combs* – in that the regulatory change occurred after the claimant filed the application, but before the ALJ held a hearing.  In *Cherry*, the court held that the revision attached "new legal consequences" for individuals with claims pending prior to the effective date of the revision.  The Court first determined that the "'act' of the claimant to be considered is the filing of a claim."  *Id.* at 1358-59 (citing *National Mining Association v. Department of Labor*, 292 F.3d 849, 860 (D.C. Cir. 2002)).  The *Cherry* court continued,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At the time Cherry filed her claim, Listing 9.09 was in effect. While her claim was pending initial determination, the agency's deletion of the obesity listing and adoption of the revised regulation clearly "raise[d] the bar on proof of disability based on obesity." . . . . As noted above, Listing 9.09 provided the claimant with a presumption of disability at Step Three of the evaluation process based on obesity, while the revised listings do not. Under the revised regulation, Cherry was "required to show the extent to which her obesity affects each step of the sequential evaluation process," including its effect on a listed impairment and her residual functional capacity. If, however, her claim had been evaluated under the listing in effect at the time she filed her claim, she could have established that she met or equaled the obesity listing, thereby entitling her to a presumption of disability at Step Three of the evaluation process. The Court disagrees with the Commissioner's position that the "regulatory change merely eliminates one unreliable method of determining disability, and does not alter the ultimate standard for evaluating disability claims based on obesity or any other impairment." The elimination of the separate obesity listing clearly alters the standard for evaluating disability claims.

*Id.* at 1358-59 (internal citations omitted); *cf. Portlock v. Barnhart*, 208 F. Supp. 2d 451, 461 (D. Del. 2002) (finding application of revised obesity listing to claim pending judicial review was impermissibly retroactive); *Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1131 (N.D. Cal. 2001) (same); *see also Nash v. Apfel*, 2000 WL 710491 (10th Cir. June 1, 2000) (unpublished).

In contrast, in *Combs* a majority[6] of the Sixth Circuit held that the application of the new Social Security regulation to a pending application was not impermissibly retroactive. Applying the *Landgraf* factors, the majority held that claimants do not "become obese or otherwise become impaired in reliance on the availability of the presumption in the listing," nor do they "file their claims, or decide what to put in their claims, based on how the agency determines whether they meet the statutory requirements for disability eligibility." *Combs*, 459 F.3d at 646. The court also emphasized what it characterized as the procedural nature of the rule change:

Applying this distinction, the change in step three is more procedural than substantive in nature. The ultimate criteria of disability eligibility are not changed. Instead, a presumption designed for administrative workability was changed to conform agency determinations more closely with the statutory requirements. While the change may be outcome-determinative for some claimants, the same can be said for a jury trial right or the lifting of an immunity. The difference has to do with whether there is a change in substantive obligation as opposed to a change in the way in which the same obligation is adjudicated. In that light, the change in administrative presumption in step three is more like the latter. The substantive requirements for disability eligibility have not changed, only the way in which the agency goes about determining whether they are present.

---

[6] In addition to the majority opinion, one judge separately concurred in the judgment, one judge concurred in part and dissented in part, and five judges dissented.

*Id*. at 647. The majority also held that the relevant date for retroactivity purposes was the date of adjudication, rather than the date that the claimant filed the application for benefits, because the regulatory change was directed at the five step adjudicatory process. *Id*. at 649.

The *Combs* dissenters reasoned that, contrary to the characterization of the regulatory change as a "procedural" one, in actuality the deletion of obesity as a listed impairment worked a substantive change on claimants, and thus was retroactive:

> Under Listing 9.09, if Plaintiff met certain criteria, there was an irrebuttable presumption that Plaintiff was disabled and thus entitled to benefits. Under the new obesity rules, Plaintiff must actually prove disability at Step Three, Four, or Five of the SSA's process in order to qualify for benefits. In *Kokal v. Massanari*, a district court viewed the deletion of Listing 9.09 in this manner: "Here, Plaintiff's rights would be substantively altered if the [change in obesity rules] was deemed applicable to pending claims, because the revised regulation would raise the bar on proof of disability based on obesity." 163 F. Supp. 2d 1122, 1131 (N.D. Cal. 2001). As the facts of this case so aptly demonstrate, the new obesity rules adversely affected Plaintiff's prospects for success on the merits.

*Id*. at 668 (Clay, J. dissenting). The dissenters also criticized the majority's focus on the date of adjudication as the relevant date for retroactivity purposes, and instead argued that the relevant date was the filing of the claim. *See id*. at 671-74.

In the absence of any guidance from the Ninth Circuit, the Court agrees with the reasoning of the *Cherry* court and the *Combs* dissenters, and holds that the application of the revised listing to plaintiff's pending application is impermissibly retroactive. The Court finds particularly instructive *National Mining Association v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002), which was discussed at length in *Cherry*, *Combs*, and the other cases analyzing the deletion of the obesity listing. In *National Miners*, the D.C. Circuit evaluated whether a host of new rules promulgated by the Department of Labor under the Black Lung Benefits Act could be applied to pending claims. The D.C. Circuit explained its analysis as follows:

> In analyzing each new regulation, we first look to see whether it effects a substantive change from the agency's prior regulation or practice. If a new regulation is substantively consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue, then its application to pending cases has no retroactive effect. If a new regulation is substantively inconsistent with a prior regulation, prior agency practice, or any Court of Appeals decision rejecting a prior regulation or agency practice, it is retroactive as applied to pending claims.

*Id*. at 860. The *National Miners* court held that some of the rules were substantively inconsistent with prior practice, and thus could not be applied to any claims filed prior to the effective date of the new

10

**United States District Court**
For the Northern District of California

1   rules.

2        For example, the court found substantively inconsistent a "total disability rule" that provided that

3   nonpulmonary diseases that "cause[ ] an independent disability unrelated to the miner's pulmonary or

4   respiratory disability, shall not be considered in determining whether a miner is totally disabled due to

5   pneumoconiosis." *Id.* at 864.  The court held that the new regulation "changes the legal landscape by

6   precluding adjudicators from considering unrelated medical disabilities, reversing the rule in the Seventh

7   Circuit, and precluding any other circuit from adopting the Seventh Circuit's interpretation.  It cannot

8   be said to be merely 'procedural,' because it has a direct effect on the determination of liability." *Id.*

9        Here, like the "total disability rule" in *National Miners*, the regulatory change at issue is

10  unquestionably substantive because it changes the criteria  that a claimant must meet in order to prove

11  disability.  Under the former version of Listing 1.03, a claimant could meet the listing by showing (1)

12  a "history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal

13  motion of the affected joint on current physical examination" and (2) "[r]econstructive surgery . . . of

14  a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected

15  to occur, within 12 months of onset."  20 C.F.R. § 404, Subpt. P, App. 1, § 1.03 (2001).  In contrast,

16  under the version of Listing 1.03 applied by the ALJ, a claimant must show an "[i]nability to ambulate

17  effectively" which is defined as a claimant "having insufficient lower extremity functioning . . . to

18  permit independent ambulation without the use of a hand-held assistive device(s) that limits the

19  functioning of both upper extremities."  20 C.F.R. § 1.00B2b (2005).

20       This revision had a "direct effect on the determination of liability," and indeed the administrative

21  record suggests that plaintiff meets the criteria of the former version of Listing 1.03.  The evidence

22  shows that plaintiff has had numerous unsuccessful surgeries on his knee, walks with a significant limp

23  and uses a cane, and has suffered from joint pain.  In contrast, the ALJ found that plaintiff did not meet

24  the revised Listing 1.03 primarily because several doctors who examined plaintiff stated that plaintiff

25  could walk for short distances without the use of an assistive device.  Because "the instant regulation[]

26  would actually change the scope of liability for claims that were filed at a time when these rules were

27  not in effect," the Court holds that the application of the revised version of Listing 1.03 to plaintiff's

28

11

United States District Court
For the Northern District of California

1  application was impermissibly retroactive.[7]  *National Miners*, 292 F.3d at 868.

2      Accordingly, the Court GRANTS plaintiff's motion for summary judgment, DENIES

3  defendant's motion, and REMANDS to the ALJ for further proceedings pursuant to the former version

4  of Listing 1.03.  (Docket Nos. 15, 16).  In light of the disposition of the retroactivity issue, the Court

5  finds it unnecessary to address the remaining issues raised by the parties.

6

7      **IT IS SO ORDERED.**

8

9  Dated:   September 28, 2007                    _____

10                                               SUSAN ILLSTON
                                                 United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24      [7]  The Court notes that, as with the obesity regulation at issue in *Combs*, here the Commissioner
    stated that the 2002 version of Listing 1.03 would apply to claims pending at the time that the rules
25  became final.  *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System
    and Related Criteria, 66 Fed. Reg. 58,010, at 58,011 ("Explanation of the Effective Date") (Nov. 19,
26  2001).  The government does not address this issue in its papers, nor does defendant contend that the
    Social Security Administration had any statutory grant of authority to engage in retroactive rule-making.
27  In the absence of any on point Ninth Circuit authority, the Court does not afford any weight to the
    agency's statement of its intent to apply the final rules to pending claims.  *See Kokol*, 163 F. Supp. 2d
28  at 1133.